IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BEVERLY MATHIS, o/b/o T.M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 2:10-cv-366-TFM |
| ) | [wo] |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On June 18, 2007, plaintiff Beverly Mathis ("Plaintiff" or "Mathis") filed an application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1380-1383c, *et seq*., on behalf of her daughter, T.M.[1] After the initial application was denied, Mathis timely requested a hearing before an administrative law judge ("ALJ") which took place on February 26, 2009. In the decision issued on July 10, 2009, the ALJ denied Mathis' claim finding T.M. did not have a "marked" or "extreme" limitation in any domain of functioning. (Tr. 9-15). A request for review was submitted to the Appeals Council as well as newly acquired evidence that was presented for the first time to the Appeals Council. The Appeals Council declined review, hence the decision of the ALJ became the final decision of the Commissioner of

---

[1] Pursuant to the E-Government Act of 2002, as amended on August 2, 2002, and M.D. Ala. General Order No. 2:04mc3228, the Court has redacted the plaintiff's minor child's name throughout this opinion and refers to her only by her initials, T.M.

Social Security ("Commissioner").[2]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The parties consent to the undersigned rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636 (c)(1) and M.D. Ala. LR 73.1.  The Court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons that follow, the Court AFFIRMS the Commissioner's decision denying T.M. supplemental security income benefits.

## I. NATURE OF THE CASE

Mathis seeks judicial review of the Commissioner's decision denying T.M.'s application for disability insurance benefits and supplemental security income.  United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405 (2006).  The Court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id.*

## II. BACKGROUND

T.M. was born on May 19, 2003. Tr. 15.  In August of 2004, T.M. was seen at the Dothan Pediatric Clinic for a 15-month well baby examination wherein Amy Marshall, CRNP ("Marshall") noted that T.M. appeared to have normal activity and no significant limitations.  TR. 258-59.  Marshall saw T.M. again in November of 2004 wherein she

---

[2] Pursuant to the Social Security Independence and program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred tot he Commissioner of Social Security.

noted T.M. was walking fast and combining words to make phrases.  Tr. 256.  In May of 2005 William Barron, Jr., M.D., examined T.M. in relation to a temperature due to a "[n]ear drowning in bathtub yesterday afternoon."  Tr. 254.  Dr. Barron found no abnormalities in T.M., but prescribed an antibiotic as a preventative measure as well as scheduling a three week recheck to ensure no further problems.  Tr. 254.  On the May 19, 2005, follow up visit Dr. Barron noted no abnormalities.  Tr. 252-53.

It was not until T.M.'s three-year well child examination on March 6, 2007 that Marshall was advised by Plaintiff that T.M. had a short attention span, was verbally and physically aggressive, and had difficulty with learning, speaking, and following commands.  Tr. 249.  Marshall provided referrals to a psychologist and speech therapist after finding no physical abnormalities in T.M.  Tr. 250.  Shortly thereafter, Alison Lancaster at Flowers Hospital conducted a speech-language evaluation and found that T.M. had a mild receptive language delay, and moderate expressive language delay but that all errors were age-appropriate.  Tr. 232-36.  T.M. was further evaluated by Randal Jordan on April, 2007 where he diagnosed T.M. with ADHD, a Global Assessment of Functioning (GAF) of 65-70, and a "slight or borderline developmental delay."  Tr. 291.  Dr. Jordan stated that "developmentally I don't think [T.M.] is behind."  Tr. 287.

On June 5, 2007, Ann Jacobs, Ph.D, performed an intellectual evaluation of T.M. wherein she found that T.M. had borderline intelligence, with a verbal IQ of 78, a performance IQ of 77, and a Full Scale IQ of 78.  Tr. 238-40.  Dr. Jacobs stated that

T.M.'s IQ scores "may be a low estimate of [her] abilities due to her language difficulties." Tr. 239. Based on the IQ testing, Dr. Jacobs recommended T.M. receive "early intervention services" related to her speech/language delay and that "[a]t [T.M.'s] age, these services would be provided through the local school system." Tr. 239. T.M. was also listed as having poor attention, labile affect, fair memory, poor impulse control, below average judgment, and was agitated, hyperactive and fidgety. Tr. 309.

Southeast Psychiatric Services began monitoring T.M. which continued through October 2008 for pervasive developmental delay. Tr. 307-09. In August 2007, T.M. was seen at the Southeast Neurology Services because of staring episodes. Tr. 298-305. T.M. was evaluated by Tim P. Faulk, Ph.D., in November and December of 2008, and Dr. Faulk found that T.M. had no unusual mannerisms, gestures, normal articulated speech, and somewhat excessive motor activity. Tr. 331-33. Dr. Faulk diagnosed T.M. with ADHD, traumatic brain injury (by history), learning disorder, and borderline intellectual functioning. Tr. 341. He also found that she was consistently polite and cooperative with no decline in attention during the interview. Tr. 333.

T.M. received special education services of speech therapy while attending traditional classes throughout the 2008-09 school year. Tr. 129-38. The record also indicates T.M. has ongoing difficulties in following simple commands, does not share toys, and exhibits aggressive behaviors at school. Tr. 147.

On February 26, 2009, Plaintiff testified that T.M. was fine until her drowning

accident, but that "she wasn't right after that." Tr. 38, 41. Plaintiff testified that the most remedial actions are beyond T.M.'s ability including tying her shoes, brushing her hair, bathing, buckling her pants, or wiping after using the bathroom. Tr. 41. Many of the medical reports leading up to the hearing did not support the Plaintiff's testimony.

Subsequent to the ALJ hearing, Plaintiff submitted additional evidence to the Appeals Council. The evidence included incidents at school where T.M. dropped a plate and refused to pick it up on November 14, 2008 (Tr. 185); T.M. did not follow the teacher's instructions and "pitched a fit" on December 10, 2008 (Tr. 187); failed a spelling test on March 4, 2009 (Tr. 188-91); pushed and hit a child on the bus on March 3, 2009 (Tr. 214); a statement from Dr. Jacobs of Dothan South East Psychology and Counseling Services noting the severity of ADHD, Expressive Language Disorder and Borderline Intellectual Functioning (Tr. 365-66); a letter from Carol Barr dated August 4, 2009 regarding the lap seat belt concern (Tr. 369-70); a letter dated July 30, 2009 from Larry A. Beauchamp stating that T.M.'s behavioral and educational problems are expected to hold her back (Tr. 374-77); as well as a Mental Impairment Questionnaire, dated January 22, 2010, by Shakir Meghani, M.D. wherein T.M. is listed as having an extreme limitation in all domains of functioning. Tr. 378-80.

### III. STANDARD OF REVIEW

The Court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards.

*Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it supported by substantial evidence."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence).  The Court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied."  *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842, (1971) and *MacGregor v. Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427).

  If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact,

and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129,131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.; Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### IV. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[3] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below

---

[3] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

the poverty line.[4]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation

---

[4] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1)    Is the person presently unemployed?
>
> (2)    Is the person's impairment(s) severe?
>
> (3)    Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[5]
>
> (4)    Is the person unable to perform his or her former occupation?
>
> (5)    Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still

---

[5] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[6] ("grids") or hear testimony from a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Id.* at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

**V. STATEMENT OF THE ISSUES**

Plaintiff raises two points of error attacking the ALJ's decision.  Pl. Br. at 1.  The first issue, as stated by the Plaintiff, is "[w]hether new evidence submitted to the Appeals Council warrants remand."  *Id*.  The second issue presented is "[w]hether the Commissioner failed to properly evaluate Ms. Mathis' claim of Pervasive Development Disorder."  *Id*.

The issues and arguments Mathis raises turn upon this Court's ultimate inquiry of

---

[6] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987).

## VI. DISCUSSION AND ANALYSIS

**A.    Whether the new evidence to the Appeals Council warrants remand.**

The presentation of new evidence in any social security administration case, at any point subsequent to the hearing before the ALJ, necessarily creates unique questions that must be addressed by the Court.  In the Eleventh Circuit this has been a recognized source of confusion.  *See Ingram v. Astrue*, 496 F.3d 1253 (11th Cir. 2007) (wherein the Court stated "[i]nartful dicta in a few of our recent decisions has confused this issue, because we mistakenly stated that evidence first presented to the Appeals Council could be considered by the court only if the applicant had good cause for not presenting it earlier to the administrative law judge.").

The confusion in the courts stems from the language found in 42 U.S.C. § 405(g), which "permits a district court to remand an application for benefits to the Commissioner, who was denominated 'the Secretary' in the original statute, by two methods, which are commonly denominated 'sentence four remands' and 'sentence six remands,' each of which remedies a separate problem." *Id.* at 1261.  Sentence four of section 405(g) provides the Court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

Sentence six provides the Court with power to remand the application to the Commissioner "and may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Ingram*, 496 F.3d at 1261.

Critical to the determination between which of the two sentences applies to any case is when the new evidence is submitted for consideration after a determination has been made by the ALJ. While "[a]n application for disability benefits [] follows an intricate path of administrative process before it can be reviewed by a federal court" it is generally recognized that "the claimant is allowed to present new evidence at each stage of this administrative process." *Id*. at 1260-61 (citing 20 C.F.R. § 404.900(b)). If evidence is presented to the Appeals Council, subsequent to the ALJ's hearing but prior to the Council's final determination, "[t]he Appeals Council *must consider* new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" 20 C.F.R. § 404.970(b) (emphasis added). When new evidence is presented to the Appeals Council, it is reversible error if the Council declines review without considering the new evidence. *Ingram*, 496 F.3d at 1264-65.

However, the fact that the Appeals Council denies review is not, in and of itself, evidence that the Council did not consider the evidence presented. To the contrary, the

presumption is that new evidence presented to the Appeals Council is appropriately considered by the Council pursuant to the Administrations regulations. *See Id.*, at 1262 (wherein the Appeals Council accepted Plaintiff's new evidence, but denied review because the Appeals Council found no error in the opinion of the ALJ and recognized the Council's requirements under 20 C.F.R. § 404.900(b)). If, after appropriate consideration of the new evidence presented, the Council then declines to review the case then it is to be considered a final decision subject to appellate review by this Court. *Id.* at 1263.[7] The Court will then consider any petition for remand under sentence four of section 405(g) without the stringent application of sentence six. *Id.* at 1262.

"Sentence six of section 405(g) provides the sole means for a district court to remand to the Commissioner to consider new evidence presented *for the first time in district court.*" *Id.* at 1267 (emphasis added). Sentence six of section 405(g) is to be treated as "an entirely different kind of remand [from the fourth sentence], when evidence is presented for the first time to the district court that was 'not in existence or available to

---

[7] The Eleventh Circuit notes that the Third, Sixth, and Seventh Circuits have relied on 45 Fed.Reg. 52,096 (Aug. 5, 1980) (codified at 20 C.F.R. § 404.955) to conclude that the decision of the ALJ is the only final decision of the Commissioner subject to judicial review, but directly rejects that position and instead joins with the Second, Fourth, Fifth, Eighth, Ninth, and Tenth Circuits holding that a request for review by the Appeals Council is part of the "final decision" of the Commissioner. *Ingram,* at 1263 (citing *Higginbotham v. Barnhart*, 405 F.3d 332, 335-36 (5th Cir. 2005); *Perez v. Chater*, 77 F.3d 41, 44-46 (2d Cir. 1996); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992); *Vilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc)).

the claimant at the time of the administrative proceeding that might have changed the outcome of the proceeding.'" *Id*. (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S.Ct. 2658, 2664, 110 L.Ed.2d 563 (1990)); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 98, 11 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991) (stating that the sixth sentence of section 405(g) allows for "new evidence ... that was not available to the claimant at the time of the administrative proceeding."). The determination of the evidence being new and material, and that good cause existed for the failure of the claimant to not have submitted the evidence to the ALJ only applies to cases where the evidence is submitted for the first time to a federal court. *Id.* at 1268. The court in *Ingram* discusses *Vega v. Commissioner of Social Security*, wherein the court mistakenly applied the standards of a sentence six review to a case in which the evidence had been appropriately submitted to the Appeals Council as part of the administrative process and should have applied the sentence four standard of substantial evidence. *Vega*, 265 F.3d 1214 (11th Cir. 2001).

In the present case, the sentence four standard of review applies which means this Court must determine whether the Appeals Council correctly decided that the administrative law judge's action, findings or conclusion is not contrary to the weight of the evidence currently of record. *See Id*. at 1219. Therefore, the Court will address the evidence presented to the Appeals Council after the ALJ's decision and determine whether there was substantial evidence for the Council's decision to decline review as well as support the ALJ's original decision. The evidence submitted to the Appeals

Council can generally be broken down into two categories: 1) school reports dealing with performance, behavior, and educational problems, and 2) medical reports.  (Pl. Br. 5-6)

The notes home refer to a few incidents of disciplinary issues of T.M. while at school.  Tr. 185-87.  These incidents range from dropping her plate, pushing another student in line, and walking through a puddle.  *Id*.  One incident on the bus was also submitted.  *Id*. at 214.  While this new evidence sheds some light on the daily behavior of T.M., that it does not rise to the level of rebutting the other evidence presented to the ALJ which formed the substantial evidentiary basis of his decision.  Tr. 20-24.

The medical reports cause the Court more reason to pause to ensure that the decision is supported by substantial evidence.  Specifically, the Mental Impairment Questionnaire completed by Dr. Shakir Meghani, and the statement from Dr. Jacobs of Dothan South East Psychology and Counseling Services are the primary medical reports submitted to the Appeals Council that were not available to the ALJ at the time of the hearing.  (Tr. 365-66, 376-77)  Both medical reports were accomplished on pre-formatted documents which require the physician to check a box or line, circle a category, or make some other perfunctory mark on the report with virtually no description written or typed to explain the nature of the assessment.

"Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."  *Mason v. Shalala*, 994 F.2d 1058, 1065 (4th Cir. 1993).  "[T]hese so-called 'reports are unaccompanied by thorough written reports, their

reliability is suspect....'" *Id*. (citing *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986); *O'Leary v. Schweiker*, 710 F.2d 1334, 1341 (8th Cir. 1983)). Even if this Court were to assume that the ALJ had these reports at the time of the original decision the substantial amount of the weight of the evidence goes to support the decision reached by the ALJ.

The weight of the medical evaluation can also be affected by the length of the treatment relationship and frequency of examination, as well as the nature and extent of the treatment relationship with the attending physician. 20 C.F.R. § 416.927(d)(2). The Commissioner would have us completely ignore the report of Dr. Meghani based on *Gibson v. Heckler*, wherein the court held that they did not have to give more weight to a medical opinion because the opinion in question was from a doctor that had seen the plaintiff on only one occasion. *Gibson*, 779 F.2d 619, 623 (11th Cir. 1986). Though T.M. did see Dr. Meghani on more than one occasion, these visits were sparse over a period of years. Dr. Meghani should have been able to provide a greater amount of detail in the report because of the longstanding relationship. Had there been more detail that addressed the issues of T.M. directly the reliability of the document would not be suspect. *Mason*, 994 F.2d at 1065. This report does not overcome the substantial evidence relied upon by the ALJ at the time of the original decision.

Dr. Jacobs noted in the new evidence provided to the Appeals Council the severity for ADHD, Expressive Language Disorder, and Borderline Intellectual Functioning was

moderate to severe. Tr. 365-66. Not only does this conflict with other evidence considered by the ALJ, notably Dr. Jordon's finding that T.M.'s mental status was "unremarkable for major psychiatric events" and that she only had "slight to borderline developmental delay" Tr. 290-91. This directly conflicts with Dr. Jacobs' finding of T.M.'s IQ score showing borderline intelligence "may be a low estimate of her abilities due to her language difficulties." Tr. 239. Furthermore, based on the nature of the relationship, the form filed with the Appeals Council should have contained much more detail as to the rationale behind Dr. Jacobs' conclusions which would have caused it to be given substantially greater weight, rather than the few check marks with no descriptions it contained. *Mason*, 994 F.2d at 1065.

Based on the sentence four section of 405(g), the Court need only determine if the Commissioner's decision is supported by substantial evidence while taking into consideration the evidence that was presented only to the Appeals Council and in doing so, the Court finds that substantial evidence exists to support the conclusions of both the ALJ and Appeals Council.

**B.    Whether the Commissioner failed to properly evaluate Ms. Mathis' claim of Pervasive Development Disorder**.

The Court recognizes that "[t]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *see also Mixon v. Astrue*, 2011 WL 867213, *6 (M.D. Ala. 2011) (quoting *Dyer* ). "[T]hough the ALJ did not specifically reference the reports, his

statement that his findings were made after consideration of the entire record are sufficient to support this Court's finding that he did, in fact, consider the information." *Mixon,* 2011 WL 867213, *6. When the Court, after reviewing the entirety of the record of proceedings, is able to determine that the ALJ considered T.M.'s medical condition as a whole it is then considered to be substantially supported and is not the perview of the Court to simply overrule the ALJ's decision. *Newsom ex rel. Bell. v. Barnhart*, 444 F.Supp.2d 1195, 1197-98 (M.D. Ala. 2006) (quoting *Dyer*, 395 F.3d at 1211). "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *McCray v. Massanari*, 175 F.Supp.2d 1329, 1336 (M.D. Ala. 2001) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).

The Court takes judicial notice that pervasive developmental delay disorder (PDD) refers to a group of conditions that involve delays in the development of many basic skills, most notably the ability to socialize with others, to communicate, and to use imagination.[8] The ALJ notes that T.M. "experienced ADHD, cognitive delay, pervasive developmental delay disorder, and traumatic brain injury" as part of his review of the

---

[8] See *Pervasive Development Disorders (PDDs)*, http://www.webmd.com/brain/autism/development-disorder, (last visited June 28, 2011); *Autism and other pervasive developmental disorders*, http://kidshealth.org/parent/medical/learning/pervasive_ develop_disorders.html (last visited June 29, 2011); and *NINDS Pervasive Developmental Disorders Information Page*, http://www.ninds.nih.gov/disorders/pdd/pdd.htm (last visited June 29, 2011,) (All of which define PDD as a less than normal development in aspects of communication and socialization).

evidence considered in his opinion. Tr. 17. However, throughout the opinion, the ALJ refers to a number of socialization and communication difficulties experienced by T.M. that are specifically symptomatic of PDD. For example, the ALJ goes into detail regarding the Natural Environment Survey completed by Amanda McCurley, speech therapist. Tr. 19. Also, the ALJ addresses Dr. Faulk's own report, as well as the report of the teacher, Ms. Hudson, who both discuss the verbal difficulties of T.M., as well as having very little trouble with T.M. socially. Tr. 22.

Plaintiff cites to the unpublished case of *Tejera ex rel. G.J. v. Astrue*, Civ. Act. No. 8:07-cv-183-T-TBM, 2008 WL 786324 (M.D. Fla. Mar. 21, 2008) wherein the court found that there was not enough in the record to allow the court to conclude that the ALJ fully considered the entire record. That is not the case here. Much of what appears in the ALJ's opinion directly relates to socialization and communication issues raised by the Plaintiff which directly pertains to PDD such that the Court concludes that the ALJ did in fact properly consider the PDD throughout his opinion and also considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929, SSRs 96-4p and 96-7p." Tr. 17.

### V. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by

substantial evidence and proper application of the law.  It is, therefore, ORDERED that the decision of the Commissioner is AFFIRMED.

    A separate judgment will be entered.

    Done this the 29th day of July, 2010.

                                        /s/ Terry F. Moorer
                                        TERRY F. MOORER
                                        UNITED STATES MAGISTRATE JUDGE